# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 19, 2018　　　　Decided August 2, 2019

No. 18-3003

UNITED STATES OF AMERICA,
APPELLEE

v.

MIR ISLAM,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cr-00067-1)

---

*Jonathan Zucker*, appointed by the court, argued the cause and filed the briefs for appellant.

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Jonathan P. Hooks*, Assistant U.S. Attorneys.

Before: KATSAS, *Circuit Judge*, and SILBERMAN and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:   This appeal addresses the legal consequences of a criminal defendant's failure to object to a magistrate judge's adverse report and recommendation.   We also consider claims that defense counsel provided ineffective assistance during proceedings to revoke a term of supervised release.

I

Mir Islam received two federal sentences for various offenses.   In the Southern District of New York, Islam pleaded guilty to crimes involving credit-card fraud, identity theft, and computer hacking.   An SDNY judge sentenced him to one day of imprisonment followed by three years of supervised release. In the District of Columbia, Islam pleaded guilty to crimes involving the theft and online publication of personal information, conveying false information about the use of explosives, and cyber-stalking.   A DDC judge sentenced him to two years of imprisonment followed by three years of supervised release.   The respective terms of supervised release were subject to substantially similar conditions.

After Islam served both prison sentences, he began concurrently serving the terms of supervised release.   Because Islam was living in New York, the SDNY probation office conducted supervision for both courts.

On January 18, 2017, Islam was arrested in New York for violating the conditions of his supervised release.   On January 19, the SDNY probation office filed with the SDNY a petition to revoke the supervised release.   On April 11, the SDNY judge revoked Islam's original term of supervised release and imposed two years of imprisonment followed by one year of supervised release subject to the same conditions previously imposed.   She recommended that the imprisonment and supervised release run concurrently with any further

punishment that the DDC judge might impose. With credit for time served, Islam was released from SDNY custody on August 17, 2017.

In the meantime, the DDC probation office filed its own petition to revoke with the DDC. On February 1, 2017, the DDC judge issued a warrant for Islam's arrest, which was lodged as a detainer to be executed upon Islam's release from SDNY custody. On August 14, Islam moved to dismiss the detainer and to transfer the DDC case to the SDNY. On the same day, the DDC judge denied the motion in a minute order. Upon his release from SDNY custody, Islam was held under the detainer and then transferred to the District of Columbia. On September 6, Islam arrived in the District, was arrested under the warrant, and appeared before a magistrate judge assigned to his case.

The magistrate judge scheduled a revocation hearing for September 15, but Islam sought and received two continuances. On October 27, Islam moved to dismiss the petition for revocation. Among other things, he argued that the delay between his arrest in New York and revocation proceedings in the DDC violated both the Due Process Clause of the Fifth Amendment and Federal Rule of Criminal Procedure 32.1(a)(1). Islam also sought to transfer the matter to the SDNY. On November 8, the magistrate judge held a hearing on these issues.

On December 4, the magistrate judge issued a thirty-page report and recommendation rejecting Islam's various arguments. The magistrate judge proposed finding that Islam had engaged in unauthorized travel, failed to identify computers and other electronic devices to which he had access, failed to allow monitoring of those devices, failed to attend mental-health counseling, and failed to provide requested

financial information—all in violation of his supervised-release conditions. The magistrate judge recommended that the district court impose four months of imprisonment. She recommended no further supervision because the SDNY probation office would be supervising compliance with the conditions imposed in the SDNY, which were "nearly identical" to those imposed in the DDC. App. 98. The report and recommendation stated that "any party who objects to the proposed findings or recommendations herein must file written objections within fourteen days" of service. App. 99. It further warned that the parties "may waive their right of appeal from an order of the District Court adopting such findings and recommendations" if they "fail to file timely objections." *Id.* Islam did not file any objections.

The district court held a revocation hearing on December 19, 2017. At the outset, the court asked the parties if they objected to the report and recommendation. Through counsel, Islam replied that he did not. Still, the court went over each violation and confirmed that Islam had no objections. The court adopted the proposed findings that Islam had violated his supervised-release conditions in five different respects, revoked his supervised release, and imposed nine months of imprisonment followed by 24 months of supervised release. The court rejected the magistrate judge's recommendation of a four-month prison term with no further supervised release, as well as the SDNY judge's recommendation of a concurrent prison term. Regarding the relationship between the SDNY and DDC proceedings, the district court explained: "[T]his was a separate matter and there was a separate criminal proceeding here. This is a violation of the terms with respect to that separate criminal proceeding." App. 110.

5

II

On appeal, Islam seeks to raise the same delay argument that he pressed unsuccessfully before the magistrate judge. He contends that the lag between his January 2017 arrest and his December 2017 revocation hearing violated both due process and Rule 32.1(a)(1).  The government responds that Islam forfeited his right to appeal the district court's decision rejecting these claims by failing to object to the magistrate judge's adverse recommendation.  We agree.

A

The Federal Magistrates Act permits a district court to "designate a magistrate judge to conduct hearings" on various civil and criminal matters, 28 U.S.C. § 636(b)(1)(B), including petitions "to modify, revoke, or terminate supervised release," 18 U.S.C. § 3401(i).  For such petitions, the magistrate judge must make "proposed findings of fact and recommendations," *id.*, as she must for all other dispositive matters referred to her, *see* 28 U.S.C. § 636(b)(1)(B); Fed. R. Crim. P. 59(b)(1); Fed. R. Civ. P. 72(b)(1).  Within 14 days of the recommended disposition of a criminal case, any party "may" file objections, Fed. R. Crim. P. 59(b)(2), in which case the district court "must consider" the objection "de novo," *id.* 59(b)(3).  "[F]ailure to object in accordance with this rule waives a party's right to review."  *Id.* 59(b)(2).  Failure to object also "waives a party's right to review" of any non-dispositive matter referred to a magistrate judge in a criminal case.  *Id.* 59(a).

The Supreme Court explained the rationale for this waiver rule in *Thomas v. Arn*, 474 U.S. 140 (1985), which held that the courts of appeals could make and enforce such a rule through their supervisory powers.  *See id.* at 155.  In this context as in others, contemporaneous objections help to "focus attention" on any genuinely contested issues.  *Id.* at

147. Moreover, without the waiver rule, litigants could sandbag a district court "by failing to object and then appealing," which would either "force the court of appeals to consider claims that were never reviewed by the district court, or force the district court to review every issue in every case." *Id.* at 148. Many courts of appeals had adopted the waiver rule approved in *Thomas*, *see id.* at 146 n.4, and the Supreme Court, in 1983, codified it for non-dispositive matters in civil cases, *see* Fed. R. Civ. P. 72(a). After the Ninth Circuit later refused to apply the waiver rule to criminal cases, *United States v. Abonce-Barrera*, 257 F.3d 959, 967–69 (9th Cir. 2001), the Supreme Court, in 2005, codified it for criminal cases as well, *see* Fed. R. Crim. P. 59(a), (b)(2).

The parties briefed this case as if *Thomas* still controls, which would require us to determine whether to adopt its waiver rule as an exercise of supervisory power. But as we have explained, Rule 59(b)(2) now governs, and it provides that the "[f]ailure to object" to a magistrate judge's proposed findings and recommendations on any dispositive matter in a criminal case "waives a party's right to review." Because Islam did not timely object to the report and recommendation in this case, he cannot appeal the district court's decision adopting it.

B

Because Rule 59(b)(2) is not cast in jurisdictional terms, the courts have discretion to excuse a waiver under the rule. Islam argues that the district court excused his waiver here and that we should do likewise. We disagree.

As for the district court, Islam highlights one passing comment, made orally at the revocation hearing, that the court had reviewed and agreed with the "analysis and conclusions" of the magistrate judge. App. 105. That hardly constitutes a

decision to excuse the waiver. To the contrary, in its very next breath, the court "note[d] for the record as well that the parties have not objected to [the] report and recommendation." *Id.* And again, the court later noted that "Mr. Islam is not at this point contesting [the] report and recommendation." App. 106.

In this Court, Islam presses his claims of unlawful delay despite failing to preserve them below. We review such unpreserved claims only for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009). Here, there was no error.

Islam's due-process argument is meritless. To violate due process, a delay in revocation proceedings must be both unreasonable and prejudicial. *See Sutherland v. McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983). Islam complains about the eleven-month delay between his January 2017 arrest in New York and his final revocation hearing in December 2017. But the DDC arrest warrant was not executed until September 6, 2017. And it is the "execution of the warrant and custody under that warrant" that serves as "the operative event triggering any loss of liberty" for purposes of due process. *Moody v. Daggett*, 429 U.S. 78, 87 (1976). So, the due-process clock for the DDC revocation hearing did not begin to run until Islam was arrested on the DDC charges in September.

Islam contends that he was arrested in January 2017 for violating both the conditions imposed by the SDNY and those imposed by the DDC. He argues that the arrest was made by the probation officer based on probable cause that Islam violated both sets of conditions. But the SDNY record indicates that the arrest was made on a warrant issued by the SDNY judge for violations of the SDNY conditions. *United States v. Islam*, No. 12-cr-810 (S.D.N.Y.), ECF Docs. 36, 39, 46. Thus, the magistrate judge permissibly found that Islam was not arrested on the DDC charges until September, and the

district court permissibly adopted the finding. Given a September arrest date, the December revocation hearing—pushed back twice by continuances requested by Islam—was not unreasonably delayed. *See Howard v. Caufield*, 765 F.3d 1, 3, 13 (D.C. Cir. 2014) ("minor delay" of four months between arrest and revocation hearing was not unreasonable); *United States v. Madden*, 515 F.3d 601, 607 (6th Cir. 2008) (delay "caused by [the defendant's] own conduct" is not unreasonable).

Islam's due-process argument also fails for lack of any prejudice. The only harm he alleges is losing the ability to seek a prison term in the DDC that would run concurrently with the one imposed by the SDNY. But the district court did consider—and expressly reject—the possibility of a concurrent punishment. The court explained that the SDNY and DDC proceedings involved separate offenses, that the totality of Islam's misconduct was concerning, and that additional incarceration was therefore appropriate. Islam provides no reason to think that the district court might have assessed these issues differently had it imposed punishment sooner rather than later.

Islam further argues that the delay violated Rule 32.1(a)(1), which provides that a person arrested for violating conditions of supervised release must be brought before a magistrate judge "without unnecessary delay." Nothing in that sparse text expands due-process protections in this area. To the contrary, the rule simply codifies these protections. *See*, *e.g.*, *United States v. Ruby*, 706 F.3d 1221, 1226 (10th Cir. 2013). Islam's Rule 32.1 argument thus fares no better than his due-process argument.

9

III

In the alternative, Islam seeks a remand for an evidentiary hearing on two claims alleging ineffective assistance of counsel during the revocation proceedings. Although we remand colorable claims of ineffective assistance, we have "never held that *any* claim of ineffective assistance of counsel … automatically entitles a party to an evidentiary remand." *United States v. Sitzmann*, 893 F.3d 811, 831 (D.C. Cir. 2018) (per curiam) (quotation marks omitted). When the record "clearly shows" that the claim is meritless, or when no further factual development is needed, we may dispose of the claim without remanding. *Id.* at 831–32.

As an initial matter, it is unclear whether Islam had any right to effective assistance during his revocation proceedings. The Sixth Amendment right to counsel does not attach to revocation hearings. *Baker v. Sard*, 486 F.2d 415, 423 (D.C. Cir. 1972). The Due Process Clause does attach, but it guarantees counsel only in rare cases; as the Supreme Court has explained, the participation of counsel "will probably be both undesirable and constitutionally unnecessary in most revocation hearings." *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). Islam did have a statutory right to counsel, 18 U.S.C. § 3006A(a)(1)(E), but it is unclear whether that encompasses a right to effective assistance, *see United States v. Eskridge*, 445 F.3d 930, 933 (7th Cir. 2006). Because the government is willing to assume that ineffective-assistance principles apply to this case, and that they parallel ones that govern under the Sixth Amendment, we do likewise.

To establish ineffective assistance, a defendant must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient

performance must fall "below an objective standard of reasonableness." *Id.* at 688. Prejudice requires a "reasonable probability" that, but for the deficient performance, "the result of the proceeding would have been different." *Id.* at 694. The failure to raise a meritless objection is not deficient performance. *See Sitzmann*, 893 F.3d at 833.

Islam raises two allegations of ineffective assistance. First, he claims that his counsel was ineffective in failing to object to the magistrate judge's recommendation to reject the claim of unreasonable delay. As explained above, however, the unreasonable-delay claim lacks merit, and the delay caused no prejudice. The waiver of this claim does not amount to ineffective assistance.

Next, Islam complains that his counsel waited to file a transfer motion until October 2017, when the SDNY revocation proceedings were complete and the DDC proceedings were already well underway. Islam contends that if counsel had filed the motion in April 2017, when he first learned of the DDC charges, the motion likely would have been granted, and Islam then would have received concurrent rather than consecutive prison terms. But a transfer decision is left to the district court's discretion, 18 U.S.C. § 3605, and there is no reasonable probability that the court here would have ordered a transfer. Again, Islam cannot show prejudice.

Islam's contrary argument focuses on the magistrate judge's recommendation to reject the October transfer motion because she had already invested substantial time in the case. Islam overlooks the district court's prior decision rejecting out-of-hand the August transfer motion, which was filed before the magistrate judge had begun working on the case. Islam also overlooks the district court's subsequent revocation decision, which rejected the magistrate judge's recommendation to cede

future supervision to the SDNY. Moreover, the supervised-release violations charged in the DDC were broader than those charged in the SDNY, as only the former involved financial-disclosure obligations. And the underlying offenses in the DDC, which originally produced a prison sentence of two years, were far more serious than those in the SDNY, which originally produced a prison sentence of one day. Under these circumstances, the likelihood of the district court's granting an earlier motion to transfer would have been slim at best. Without any prejudice, Islam's second ineffective-assistance claim fares no better than his first.

*Affirmed.*