# United States Court of Appeals
## For the First Circuit

No. 19-1087

UNITED STATES OF AMERICA,

Appellee,

v.

ANTONIO TORRES-SANTANA,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]


Before

Barron, Lipez, and Dyk,[*]
Circuit Judges.


Franco L. Pérez-Redondo, Federal Public Defender, with whom Eric A. Vos, Federal Public Defender, and Vivianne Marrero-Torres, Assistant Federal Public Defender, were on brief, for appellant.
Joshua K. Handell, Assistant United States Attorney, with whom Mariana E. Bauzá-Almonte, Assistant United States Attorney, Thomas F. Klumper, Assistant United States Attorney, and W. Stephen Muldrow, United States Attorney, were on brief, for appellee.


March 12, 2021


*Of the Federal Circuit, sitting by designation.

**LIPEZ, Circuit Judge.** Appellant Antonio Torres-Santana was ordered to serve an eighteen-month sentence for violating the conditions of his supervised release by committing a new crime. He claims that his supervised release revocation hearing was unreasonably delayed, thereby violating his rights under Rule 32.1 of the Federal Rules of Criminal Procedure and the Due Process Clause of the United States Constitution. Torres asks that we vacate his sentence and dismiss the supervised release violation charge. Without deciding whether the delay at issue in this case was unreasonable, we deny Torres's appeal because he has not shown that he suffered any prejudice from the delay.

**I.**

## A. Factual Background

On June 25, 2012, Torres pled guilty to possession of a firearm by a prohibited person. See 18 U.S.C. § 922(g)(1). He was sentenced to thirty months' imprisonment, to be followed by three years of supervised release. On February 15, 2014, Torres was released from federal custody and began serving his supervised release term.

On February 5, 2015, Torres was arrested and incarcerated by Commonwealth authorities for nonpayment of child support. The United States Probation Office ("USPO") thereafter filed a motion alleging that the failure to pay child support violated a condition of Torres's federal supervision. However,

- 2 -

the USPO did not request revocation of the supervised release. On April 30, 2015, Torres was released from Commonwealth custody after paying $500 in child support.

Eight months later, on December 30, 2015, Torres was arrested for violating Article 401 of the Puerto Rico Controlled Substances Act. Article 401 criminalizes, inter alia, distribution of a controlled substance or possession of controlled substance with intent to distribute. P.R. Laws Ann. Tit. 24, § 2401(a). The arrest records described the sale of controlled substances to an undercover officer.

Instead of pleading guilty to an Article 401 offense, Torres pled guilty on May 18, 2016, to violating Article 406 of the Puerto Rico Controlled Substances Act and was sentenced to six years' imprisonment. Article 406 criminalizes an attempt or conspiracy to commit a controlled substance offense. Id. § 2406. Torres was incarcerated by the Puerto Rico Department of Corrections at the Las Cucharas Correctional Facility in Ponce.

On June 14, 2016, the USPO submitted a motion notifying the district court that Torres was sentenced by a local court for violating Article 406, alleging that Torres had violated the statutory condition requiring that "[w]hile on supervised release, the defendant shall not commit another federal, state, or local crime and shall not illegally possess a controlled substance." The motion asked the district court to order that the Commonwealth

produce Torres in federal court to show cause as to why his supervised released term should not be revoked.

With no action taken on the motion during the following ten months, Torres remained in Commonwealth custody. Finally, on April 17, 2017, the district court issued a warrant for Torres's arrest and a writ of habeas corpus ad prosequendum[1] seeking his release from Commonwealth custody for proceedings on the supervised release violation. Again, however, there was a long period of inaction, this time for about a year, and Torres remained in Commonwealth custody during that time.

Both parties reference a federal detainer, which presumably was lodged during this period, perhaps on April 17, 2017, at the same time as the writ of habeas corpus ad prosequendum, though the record does not confirm the existence of the detainer. A detainer is a "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." United States v. Mauro, 436 U.S. 340, 359 (1978) (quoting 116 Cong. Rec. 38840 (1970)). According to Torres, he would have been eligible for parole in January of 2018, "but for the fact that he had [a] federal detainer." However, the record

---

[1] A writ of habeas corpus ad prosequendum is an order used to secure the presence in federal court of a state prisoner. See United States v. Mauro, 436 U.S. 340, 344 (1978).

- 4 -

contains no evidence supporting this assertion about his eligibility for parole on the Commonwealth conviction.

Torres remained in Commonwealth custody until April 26, 2018, when he was taken from state custody into federal custody and had his initial appearance before a magistrate judge.[2] The magistrate judge appointed the Federal Public Defender to represent Torres. On May 2, Torres appeared before the magistrate judge for a detention hearing and waived his right to a preliminary revocation hearing. Five months later, the district court scheduled a final revocation hearing for October 23, 2018. The government has offered no explanation for this five-month delay. The court subsequently granted the government's motion for a continuance, which Torres did not object to, and rescheduled the hearing to November 8. The purpose of the continuance was to allow the USPO to obtain English translations of Spanish-language records regarding the Article 406 conviction. On October 30,

---

[2] The delay from the issuance of the writ of habeas corpus ad prosequendum on April 17, 2017, to the time Torres was brought into federal custody on April 26, 2018, resulted, in part, from Hurricane Irma and Hurricane Maria, which impeded the operations of the district court. The court was closed entirely from September 18, 2017 through October 3, 2017. See In Re: Emergency Measures After the Passage of Hurricane Maria, Standing Order No. 17-509 (ADC) (D.P.R. October 4, 2017). According to the judge presiding over Torres's revocation hearing, "the Court was not handling criminal cases from September of 2017 to February 28 of 2018."

Torres's counsel moved for a further continuance and the hearing was rescheduled to November 14.

**B. The First Revocation Hearing**

At the November 14 hearing, Torres conceded that he had violated the conditions of his supervised release, and the district court informed him that this concession constituted a reason to revoke his term of supervised release. The hearing proceeded directly to a discussion of sentencing factors. Torres disagreed with the government as to how the violation should be classified under the Sentencing Guidelines, which provide three classifications for supervised release violations: Grade A, Grade B, and Grade C. U.S.S.G. § 7B1.1. It is a Grade A violation if, inter alia, the defendant committed "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a controlled substance offense[.]" Id. § 7B1.1(a)(1). For purposes of § 7B1.1(a)(1), a "controlled substance offense" is defined as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Id. § 4B1.2(b). A Grade B violation involves "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." Id. § 7B1.1(a)(2). Lesser offenses are categorized as Grade C. Id.

The grade of the violation is then considered in conjunction with the defendant's Criminal History Category ("CHC") to determine the guidelines sentence. Id. § 7B1.4(a). For a Grade B violation and Torres's CHC level, CHC III,[3] the guidelines sentencing range ("GSR") is eight to fourteen months. See id. The GSR for a Grade A violation and CHC III is eighteen to twenty-four months, unless the defendant is on probation or supervised release stemming from a sentence for a Class A felony. Id.

As noted, Torres pled guilty to a conspiracy to commit a controlled substance offense under Article 406 of the Puerto Rico Controlled Substances act, instead of the Article 401 charge, which was based on information that he had sold controlled substances to an undercover agent. Torres's theory was that, although the Article 401 drug sale would meet the definition of a controlled substance offense under the relevant sentencing

_____

[3] Initially, defense counsel mistakenly stated that Torres's CHC was II. Later in the hearing, all parties agreed that the correct CHC was III.

guideline for a Grade A violation, the conduct required for the Article 406 conviction would not.[4]

Relying on the conduct that led to the arrest and the Article 401 charge, the government asserted that Torres had committed a Grade A violation. Torres argued that the court should find a Grade B classification on the basis of the charge to which he had pled guilty. In his view, the consideration of the alleged circumstances underlying the offense was improper because he had not been afforded an opportunity to confront the undercover officer to whom he had allegedly sold drugs.

Focusing on the Grade B classification and several mitigating factors, defense counsel requested a below-guidelines sentence of four months. The mitigating factors included the

---

[4] The parties did not provide the Commonwealth court documents explicating the nature of Torres-Santana's plea. Some Article 406 convictions would in fact meet the criteria of a USSG controlled substance offense because a "controlled substance offense" "includes the offenses of. . . conspiring[] and attempting to commit such [an] offense[]." U.S.S.G. § 4B1.2(b). We "treat[] this particular commentary to § 4B1.2 as authoritative" United States v. Nieves-Borrero, 856 F.3d 5, 9 (1st Cir. 2017) (citing United States v. Piper, 35 F.3d 611, 617 (1st Cir. 1994)). If Torres-Santana pled guilty to a conspiracy to possess with intent to distribute, that conviction would plainly constitute a USSG controlled substance offense and would result in the identical Grade A classification. However, if Torres-Santana pled guilty to a conspiracy to merely possess without intent to distribute, that would not qualify as a USSG controlled substance offense. As the government failed to raise this issue or provide relevant documentation, we assume, as the parties and the district court have, that the conspiracy charge Torres-Santana pled to would not prove a USSG controlled substance offense.

difficult circumstances that led Torres to commit the crime, his compliance with other terms of supervision, a significant period of sobriety, and participation in vocational programs. By contrast, the government requested a sentence of twenty-four months' imprisonment -- i.e., a term at the high end of the eighteen- to-twenty-four-month GSR based on a "Grade A" violation and CHC III. In advocating for this sentence, the government emphasized Torres's lengthy criminal history.

The district court observed that it was "clear" that Torres had sold controlled substances and negotiated a plea to a lesser conspiracy offense. Thus, it was likely that the violation was properly categorized as Grade A. Objecting, defense counsel argued that before the court determined the grade of the violation, Torres should be afforded the opportunity to confront the undercover officer. The court granted a continuance for that purpose.

## C. The Second Revocation Hearing

The revocation hearing reconvened in December 2018. The government explained that the undercover officer was not present because she was performing undercover duties and her safety could be compromised if she appeared in court. Instead, the government presented an affidavit from the undercover agent describing the drug transaction and a video recording of the incident. In addition, the government called as a witness a Puerto Rico Police

Officer, Milton Rivera Negrón ("Rivera"), who had supervised the undercover officer. Rivera reported that the undercover agent had informed him of a drug transaction with Torres and provided him with two plastic baggies containing controlled substances.

Based on this evidence that Torres had engaged in a drug transaction, the district court concluded that Torres's violation was properly categorized as Grade A. The court formally revoked Torres's supervised release and sentenced him to eighteen months' imprisonment, the low end of the applicable GSR.

Torres's counsel promptly objected to the sentence at the hearing as procedurally and substantively unreasonable. He argued that the revocation hearing was unreasonably delayed and should have been held shortly after the USPO filed the charges against Torres in May 2016. Among other contentions, counsel noted that the lapse of time had denied Torres the opportunity to question the undercover officer, who had been listed as an available witness in the Commonwealth court case in 2016. At no time did defense counsel argue that his client had not committed a violation. The only issue, across both hearings, was the sentence.

The district court responded to the defense's objection by noting that it had not been handling criminal cases between September 2017 and February 28, 2018, because of Hurricane Maria. The court further observed that defense counsel had not moved to

schedule the revocation hearing, and it stated that the defendant had suffered no harm from any delay because he was serving a Commonwealth sentence. As to the claim that the delay had denied Torres the opportunity to confront the undercover officer, the court stated that there was no per se right to confrontation at the revocation hearing. The court also noted that the video evidence was more compelling than live testimony from the undercover agent would have been.

This timely appeal followed.

## II.

Torres argues that his revocation hearing was unreasonably delayed in violation of both Federal Rule of Criminal Procedure 32.1 and the Due Process Clause of the Fifth Amendment. The revocation hearing concluded in December 2018, thirty months after the USPO petitioned the district court to revoke Torres's supervised release, twenty months after the district court issued an arrest warrant, and eight months after Torres was taken into federal custody.

### A. Standard of Review

Whether the delay in holding a revocation hearing violated a defendant's rights is a question of law subject to de novo review. United States v. Pagán-Rodríguez, 600 F.3d 39, 41 (1st Cir. 2010) (citing United States v. Santana, 526 F.3d 1257, 1260 (9th Cir. 2008); United States v. Ramos, 401 F.3d 111, 115

- 11 -

(2d Cir. 2005)). The government, however, asserts that Torres failed to raise this claim in a timely fashion in the district court and that, accordingly, the claim is waived or at least forfeited. We disagree.

As we have explained, defense counsel made a clear objection to the delay at the end of the second revocation hearing. Although the government argues that this objection did not preserve the claim for review on appeal because Torres did not move then or earlier to dismiss the revocation petition, it cites no case law for this proposition. Thus, we proceed to the merits.

## B. Legal Background

A court may revoke a term of supervised release if it conducts a revocation hearing and finds by a preponderance of the evidence that the defendant violated a condition of supervised release. See 18 U.S.C. § 3583(e)(3); Fed. R. Crim. P. 32.1(b)(2). At the hearing, the defendant is entitled to, inter alia, "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). If the supervised release is revoked, the defendant may be required to serve all or part of the supervised release term in prison. See 18 U.S.C. § 3583(e)(3).

Federal Rule of Criminal Procedure 32.1 requires that "[a] person held in custody for violating probation or supervised

release . . . be taken without unnecessary delay before a magistrate judge" for an initial appearance. Fed. R. Crim. P. 32.1(a)(1). At the initial appearance, the judge informs the person of the alleged violation, his right to counsel, and his right to a preliminary hearing. Fed. R. Crim. P. 32.1(a)(3). Unless waived by the defendant, the magistrate judge "must promptly conduct a [preliminary] hearing to determine whether there is probable cause to believe that a violation occurred." Fed. R. Crim. P. 32.1(b)(1)(A). The district court is to conduct the final revocation hearing "within a reasonable time." Fed. R. Crim. P. 32.1(b)(2). The rule does not define what constitutes a "reasonable time."

The right to a timely supervised release revocation hearing is "assured" by Rule 32.1, and, "more generally, by the Due Process Clause." Pagán-Rodríguez, 600 F.3d at 41 n.1. We recognize that "[s]ome courts have analyzed failures to hold timely revocation hearings in terms of a constitutional benchmark." Id. (citing Santana, 526 F.3d at 1259). As in Pagán-Rodríguez, "[w]hether viewed as a breach of the rule or of the Due Process Clause, the result in this case would be the same." Id.

Both parties analyze Torres's unreasonable delay claim using the framework articulated in Barker v. Wingo, 407 U.S. 514 (1972). Barker instructs that to evaluate whether a defendant has been deprived of his right to a speedy trial, courts are to use a

four-factor balancing test, considering: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's responsibility to assert his right, and (4) prejudice to the defendant.  Id. at 530.

That approach is misguided here.[5]  We are not dealing with a Sixth Amendment Speedy Trial claim.[6]  As we have previously held, we analyze a claim in this circuit under Rule 32.1(b)(2) akin to how we evaluate a Due Process claim under the Fifth Amendment.  Pagán-Rodríguez, 600 F.3d at 42-43.  To demonstrate a violation caused by a delayed revocation hearing that justifies relief, the defendant must show that the delay was unreasonable and prejudicial.  Id.[7]  Both unreasonableness and prejudice are necessary conditions.[8]  See id. ("Although unreasonable delay in

---

[5] See Santana, 526 F.3d at 1261 ("[A] reasonable time for proceeding to a full-scale criminal trial is not the same as a reasonable time for revocation proceedings, and therefore Speedy Trial Clause authority should not be applied in revocation proceedings as if it were directly controlling.").

[6] The parties are correct, however, that some circuit courts have relied on the Barker factors in the context of a delayed revocation hearing. United States v. Rasmussen, 881 F.2d 395, 398 (7th Cir. 1989); United States v. Companion, 545 F.2d 308, 311 (2nd Cir. 1976).

[7] Four other circuit courts follow this more traditional Due Process approach. United States v. Islam, 932 F.3d 957, 962 (D.C. Cir. 2019); Santana, 526 F.3d at 1260; United States v. Throneburg, 87 F.3d 851, 853 (6th Cir. 1996); United States v. Tippens, 39 F.3d 88, 90 (5th Cir. 1994).

[8] In the Barker analysis, no one factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  407 U.S. at 533.

holding a final revocation hearing constitutes a violation of Rule 32.1(b)(2), that violation does not require vacation of the judgment unless it affected the offender's substantial rights.").

## C. Application

As we shall explain, Torres's claim falters on the prejudice prong. We therefore find it unnecessary to decide whether the delay at issue in this case was unreasonable. See Throneburg, 87 F.3d at 853 (rejecting a delayed revocation hearing Due Process claim based solely on lack of prejudice, without consideration of the reasonableness of the delay).

Torres argues that he suffered prejudice in two ways: (1) the delay made him ineligible for state parole, and (2) the delay resulted in the government's primary witness being unavailable for cross-examination by Torres at the final revocation hearing.

### 1. Parole Eligibility

Torres asserts that his eligibility for parole from Commonwealth custody in January 2018 was foreclosed by the pending federal supervised release revocation proceedings. We acknowledge the possibility that a delay in holding a supervised release revocation hearing could interfere with a defendant's eligibility for parole from a state sentence in a way that would be prejudicial. As the Supreme Court has said in the Speedy Trial context: "no court should overlook the possible impact pending

charges might have on [a defendant's] prospects for parole and meaningful rehabilitation."  Moore v. Arizona, 414 U.S. 25, 27 (1973) (per curiam).

However, Torres's argument for such prejudice here is limited to one sentence in his opening brief: "there is a reasonable probability that Mr. Torres could have disposed of the revocation hearing in a way that allowed [Commonwealth] authorities to contemplate granting him parole"  in January 2018. He offers no proof of this eligibility for parole.  He offers no explanation of the considerations that would go into a Commonwealth decision on parole.  He offers no explanation as to how an earlier disposition of his supervised release revocation charge would affect his parole eligibility.  There is, in short, no proof of the prejudice he claims.

As noted earlier, Torres was brought into federal custody on April 26, 2018, yet Torres has failed to describe the trajectory of his incarceration after that date.  It appears that when he was taken into federal custody, he still had a significant amount of time left to serve on his Commonwealth sentence.  It is unclear whether he has remained in federal custody since April 2018, or whether, at some point, he was transferred back to Commonwealth custody to finish his Commonwealth sentence after completion of the supervised release revocation proceeding.  In pursuit of his parole eligibility argument, Torres should have

- 16 -

submitted a complete history of his incarceration on the Commonwealth and federal offenses, as well as projected dates that he would complete these sentences.

### 2. Confrontation

During a revocation hearing, a defendant is entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). To determine whether the interest of justice requires a witness to appear, a court should "balanc[e] the releasee's right to confront witnesses with the government's good cause for denying confrontation." United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005). In this context, "strong evidence of reliability can counterbalance a weak reason for not producing the declarant." United States v. Fontanez, 845 F.3d 439, 444 (1st Cir. 2017). Given its qualified nature, the confrontation right at issue in a probation revocation hearing is clearly not the Sixth Amendment right set forth in the Constitution.

The government argues that in the sentencing phase of a revocation hearing, the defendant is not entitled to even this limited confrontation right because the general sentencing procedure of Rule 32, not the specific revocation procedure of Rule 32.1, governs the sentencing portion of a revocation hearing. Rule 32 provides no confrontation right and gives the court "broad

discretion to accept hearsay evidence . . . so long as the court supportably concludes that the information has sufficient indicia of trustworthiness to warrant a finding of probable accuracy." United States v. Rodriguez, 336 F.3d 67, 71 (1st Cir. 2003); United States v. Aymelek, 926 F.2d 64, 68 (1st Cir. 1991) (noting "well-established doctrine that a sentencing court may rest upon hearsay evidence so long as it appears reliable"); see also U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

We have not yet decided which of these two rules, Rule 32 or Rule 32.1, governs the admissibility of hearsay evidence at the sentencing portion of a revocation hearing. The Tenth Circuit applies the Rule 32 trustworthiness standard because of its view that there is "no meaningful difference between sentencing at a revocation proceeding and sentencing after a guilty plea or jury verdict of conviction" and "[t]he task of sentencing is distinct from the task of adjudicating guilt, and therefore warrants a different set of rules." United States v. Ruby, 706 F.3d 1221, 1227 (10th Cir. 2013). Thus, in the Tenth Circuit, hearsay evidence used in revocation sentencing is not "subject to a

different, or higher, level of admissibility than it would be at other types of sentencing procedures. Id. at 1228. The Ninth Circuit, on the other hand, applies Rule 32.1 to revocation sentencing because the 2005 amendments to Rule 32.1 "explicitly gave a supervised releasee the right to allocution at the revocation hearing, which is decidedly part of sentencing." United States v. Reyes-Solosa, 761 F.3d 972, 975 n. 2 (9th Cir. 2014). We decline to resolve this legal question in the context of this case because even if we apply the more exacting confrontation analysis of Rule 32.1 to the admission of the hearsay evidence during the sentencing phase of the revocation hearing, there was no violation of that rule.

Torres claims his limited confrontation right under Rule 32.1 was violated because he did not have the opportunity to question the undercover agent who accused him of selling drugs. The agent did not testify at the hearing because she was performing undercover duties and appearing in court could compromise her safety. Instead, the government offered the testimony of Officer Rivera and an affidavit by the undercover agent who engaged in the drug transaction with Torres under the supervision of Rivera. Rivera testified that he witnessed the agent entering a bar known to the police as a site of drug activity. The undercover agent called him upon leaving the bar and reported that she had collected evidence. He then met with the agent, who showed him two bags of

drugs and informed him that she obtained them in a transaction at the bar. The undercover agent had been wearing video recording equipment and provided the recording to Rivera. The government introduced into evidence the video recording, which showed the agent giving money to Torres and Torres giving the agent two bags appearing to contain controlled substances. The affidavit of the agent submitted by the government was consistent with Rivera's testimony and the video.

The district court's decision to consider the agent's affidavit, despite the absence of live testimony, was consistent with Rule 32.1(b)(2)(C). Legitimate concerns about the undercover agent's safety provided good cause for her failure to testify. There were strong indicia of reliability supporting the agent's affidavit. Her account of the events was consistent with both Officer Rivera's testimony and the video of the incident. Given the good cause for the agent's absence, and the presence of significant corroborating evidence, the interests of justice did not require the undercover agent to appear. Thus, even assuming that the Rule 32.1 limited confrontation right applies, Torres's claim of prejudice due to the agent's absence fails.

**III.**

Because there was no prejudice from the delay in the conduct of his supervised release revocation hearing, Torres has failed to demonstrate a violation of Rule 32.1 of the Federal Rules

of Criminal Procedure or the Due Process Clause of the Constitution that justifies relief. The judgment of the district court is affirmed.

So ordered.