RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0047p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────

UNITED STATES OF AMERICA,

                         *Plaintiff-Appellee,*

    *v.*

DELDRICK LAMAR SPENCE,

                       *Defendant-Appellant.*

No. 25-5081

────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:20-cr-00046-1—Danny C. Reeves, District Judge.

Argued:  December 10, 2025

Decided and Filed:  February 18, 2026

Before:  BOGGS, BUSH, and READLER, Circuit Judges.

────────────

## COUNSEL

**ARGUED:**  Kaycee Berente, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbus, Ohio, for Appellant.  Amanda Harris Huang, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.  **ON BRIEF:**  Bethany N. Baxter, CHILDERS & BAXTER, PLLC, Lexington, Kentucky, Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant.  Amanda Harris Huang, Charles P. Wisdom Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

────────────

## OPINION

────────────

READLER, Circuit Judge.  While on supervised release, Deldrick Spence was charged with a host of drug offenses as well as being a felon in possession of a handgun.  With the district court's permission, Spence represented himself at his subsequent revocation hearing.

There, the district court revoked Spence's supervision and imposed a 24-month term of imprisonment.

On appeal, Spence primarily challenges the validity of his waiver of counsel and the procedural reasonableness of his sentence.  As the district court did not err in allowing Spence to proceed pro se and did not consider impermissible sentencing factors in imposing a within-Guidelines sentence, we affirm.

I.

Spence has a long history with the criminal justice system.  He became a felon at the age of 20 after pleading guilty in 2007 in Kentucky state court to trafficking a controlled substance and possessing drug paraphernalia.  In 2013, while on parole for that conviction, he again ran into trouble with the law.  While riding as a passenger in a vehicle stopped for a traffic violation, Spence initially gave the officer a false name.  Officers ultimately discovered that Spence, a convicted felon, was in possession of a handgun.

Spence pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Under his plea agreement, Spence "waive[d] his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except" for certain circumstances regarding the reasonableness of his sentence.  *United States v. Spence*, No. 14-cr-30103-NJR-1, Dkt. No. 24, at PageID 36 (S.D. Ill. May 5, 2020).  The district court sentenced Spence to 51 months' imprisonment and two years of supervised release.  He did not appeal his conviction.

Spence began his federal supervised release in January 2020.  Within a few months, Spence twice tested positive for drugs (first marijuana, and then both marijuana and cocaine).  The district court revoked Spence's release and imposed a 14-month prison term, to be followed by 22 months of supervised release.  Spence appealed, his counsel filed an *Anders* brief, and we affirmed the revocation in an unpublished order.  *United States v. Spence*, No. 20-5874, 2021 U.S. App. LEXIS 4321, at *12 (6th Cir. Feb. 16, 2021) (mem.).

After serving that sentence, Spence was again released under supervision. And again, he violated the terms of his release. In June 2023, Spence stipulated to three violations. The district court revoked his release and imposed a 14-month custodial sentence along with six months of supervised release. Spence was again released to supervision in July 2024.

Today's appeal concerns Spence's third revocation of supervised release, which arose from his May 2023 arrest in Ballard County, Kentucky, on state charges including trafficking in methamphetamine, possession of marijuana, possession of drug paraphernalia, and being a felon in possession of a handgun.

Here, the timeline of Spence's criminal history becomes complicated. His May 2023 arrest occurred after the violations that led to his second supervised release revocation but before his June 2023 revocation hearing, which addressed different violations. At the time of that hearing, the district court was unaware of Spence's May 2023 incident, meaning that the arrest did not play a part in the district court's revocation decision. Indeed, it was not until November 2024—after Spence had completed the custodial sentence imposed for his second revocation and had again been released with supervision—that the probation office discovered Spence's May 2023 arrest. At that point, the probation office, based on this previously unaddressed conduct, sought to revoke Spence's supervised release, initiating the proceedings at issue here.

Before this revocation hearing, his third, Spence moved to represent himself. The district court held a waiver-of-counsel hearing to determine whether Spence's request was knowing and voluntary. The court asked Spence a series of questions to ensure that he understood "all the consequences of representing [himself] in the case" as well as the nature of the four alleged violations. R. 83, PageID 334. The court explained the burden of proof, the evidentiary standard of a revocation proceeding, and the arguments that Spence would be expected to make. The court also explained the potential penalties in detail. On top of that, the court emphasized that appointed counsel was available free of charge.

Spence assured the district court that he understood the charges, the evidentiary standards, the Guideline calculations, his sentencing exposure, and the difficulties of self-

representation.  And he affirmed several times that he wished to proceed pro se.  Following nearly forty minutes of colloquy, the district court granted Spence's motion to represent himself.

The district court held the final revocation hearing four days later.  After hearing from the parties, the district court found that Spence violated three conditions of his release.  The court classified Spence's May 2023 conduct, which included the firearm and drug-trafficking charges, as a Grade A violation of the terms of his supervised release, a conclusion that required the court to revoke Spence's supervised release.  *See* U.S. Sent'g Guidelines Manual § 7C1.5 cmt. n.2.

In explaining the revocation sentence, the district court emphasized several considerations.  It noted Spence's repeated violations on supervision, including drug use, prior revocations, and the seriousness of the new criminal conduct.  It stressed deterrence, the need to protect the public, and Spence's repeated inability to comply with supervision.  And it noted that the alleged new conduct—including another felon in possession offense—reflected the same behavior underlying Spence's original federal conviction, reinforcing the need for a custodial sentence.  Taking all of this into consideration, the district court revoked Spence's supervised release and imposed a 24-month term of imprisonment, the statutory maximum.  Spence timely appealed.

II.

Spence advances three arguments on appeal:  First, that his waiver of counsel at the revocation hearing was not knowing; second, that the district court erred at sentencing by considering impermissible factors under 18 U.S.C. § 3583(e); and third, that the revocation judgment rests on an unconstitutional underlying conviction, and thus must be vacated.

A.1.  Beginning with the validity of his waiver of his right to counsel, Spence asserts that the district court's colloquy was inadequate to allow the district judge to discern whether his waiver was knowing.  Resolving the matter requires that we first understand the nature of the right being waived, which informs our standard of review.  Spence believes that his right to counsel derives in part from the Sixth Amendment.  As a result, he says, we must apply de novo review, as our Sixth Amendment waiver precedents command.  *See United States v. Johnson*, 24 F.4th 590, 600 (6th Cir. 2022).  The government counters that we should apply abuse of

discretion review, as other courts have done, *see, e.g.*, *United States v. Boultinghouse*, 784 F.3d 1163, 1172 (7th Cir. 2015), because the right to counsel at a revocation proceeding does not derive from the Sixth Amendment, and because a revocation hearing presents less risk of a deprivation of liberty than does a criminal proceeding. *United States v. Walton*, 145 F.4th 476, 484 (4th Cir. 2025).

We agree with the government. The Sixth Amendment guarantees the "Assistance of Counsel" to a defendant facing a "criminal prosecution[]." U.S. CONST. amend. VI. The Supreme Court has long understood this guarantee to encompass both sides of the representation coin: the right to counsel and, conversely, the right to proceed pro se. *See Gideon v. Wainwright*, 372 U.S. 335, 342 (1963); *Faretta v. California*, 422 U.S. 806, 821 (1975). These protections attach at "critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004). Where it applies, the Sixth Amendment right to counsel is "fundamental and essential." *Gideon*, 372 U.S. at 344.

That said, it bears emphasizing that not all proceedings in which liberty is at stake constitute criminal prosecutions within the meaning of the Sixth Amendment. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). The Supreme Court has identified at least one example. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). *Morrissey* held that the Sixth Amendment does not apply to parole revocation in a state system, a holding we have extended to the revocation of federal supervised release. *See, e.g.*, *United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005) ("[T]he protections of the Sixth Amendment do not extend to revocation hearings." (citing *Morrissey*, 408 U.S. at 489)). Unlike a criminal prosecution, a revocation proceeding at most "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey*, 408 U.S. at 480.

Although the relatively robust Sixth Amendment right to counsel does not attach at the revocation stage, defendants facing revocation still enjoy some procedural safeguards. With respect to constitutional protections, a defendant remains entitled to the minimum requirements of due process, *see Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973), which in rare instances may

require the appointment of counsel for revocation proceedings.  *Id.* at 790–91 (requiring counsel in limited circumstances, as determined on a case-by-case basis).

There are statutory guardrails, too.  Through the Criminal Justice Act (CJA), Congress instructed district courts to "place in operation . . . a plan for furnishing representation for any person financially unable to obtain adequate representation," including when a person is "charged with a violation of supervised release."  18 U.S.C. § 3006A(a), (a)(1)(E).  The Federal Rules of Criminal Procedure further provide that a district judge must inform defendants in revocation proceedings of their "right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel."  Fed. R. Crim. P. 32.1(b)(1)(B)(i).

These authorities do not purport to create something equivalent to the Sixth Amendment right to counsel, however.  For one, the CJA does not define the scope of any entitlement that it may create.  *See United States v. Islam*, 932 F.3d 957, 964 (D.C. Cir. 2019); 18 U.S.C. § 3006A(a), (a)(1)(E).  For another, a revocation proceeding is traditionally understood to be a civil proceeding concerning a breach of trust, not a criminal proceeding.  *See Morrissey*, 408 U.S. at 480; *United States v. Hill*, 48 F.3d 228, 232 (7th Cir. 1995).  That reality affords some "flexib[ility]" in the procedures a district court may utilize, rendering the proceedings less rigid and complex, thereby lessening the need for sophisticated representation.  *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (noting that a district court may consider hearsay evidence in a revocation proceeding); *see also United States v. Owen*, 854 F.3d 536, 541–42 (8th Cir. 2017) (emphasizing that, at bottom, procedures in revocation hearings must satisfy constitutional limits only to the extent of protecting due process and fundamental fairness).  For these reasons, we would not apply in this setting the equivalent standard of review—de novo— that we do in Sixth Amendment waiver settings.  *Cf. Johnson*, 24 F.4th 590 at 600 (applying de novo review to a waiver of a Sixth Amendment right to counsel).

Instead, we align with our sister circuits in holding that an abuse of discretion standard applies to our review of a district court's acceptance of a waiver of counsel as part of a revocation proceeding.  *See, e.g.*, *Walton*, 145 F.4th at 484 (reviewing waiver of counsel in revocation proceedings for abuse of discretion); *United States v. Hodges*, 460 F.3d 646, 650 (5th Cir. 2006) (same); *Boultinghouse*, 784 F.3d at 1172 (same); *United States v. Ivers*, 44 F.4th 753,

755–56 (8th Cir. 2022) (same).  Applying abuse of discretion review comports with the standard we apply when considering the waiver of other supervised release procedures.  *See, e.g.*, *United States v. Hoyle*, 148 F.4th 396, 402 (6th Cir. 2025) (right to be advised of the entitlement to hearing).  It likewise accords with the standard under which we review revocation decisions generally.  *See, e.g.*, *id.*  Accordingly, reversal of a district court's decision to accept a waiver of counsel in the revocation proceeding setting is warranted only if the district court relied on clearly erroneous findings of fact, misapplied the law or employed an erroneous legal standard, or otherwise committed a clear error of judgment.  *United States v. Hale*, 127 F.4th 638, 640 (6th Cir. 2025); *United States v. Kumar*, 750 F.3d 563, 566 (6th Cir. 2014).

A.2.  With that framework in mind, we turn to the waiver issue at hand.  Spence characterizes his waiver as "unknowing and involuntary," but he does not meaningfully develop an argument that his decision was not of his own volition.  Appellant Supp. Br. 14.  Instead, his arguments focus on whether he adequately understood his rights and the consequences of proceeding without counsel.  We thus assess whether the district court abused its discretion in determining that Spence knowingly waived his right to counsel.

As with the standard of review, the revocation context informs how we evaluate the adequacy of the district court's assessment and the accuracy of its finding.  And here as well, we do not apply Sixth Amendment precedents, which require a more exacting inquiry.  *See Hodges*, 460 F.3d at 652; *see also Johnson*, 24 F.4th at 602–03 (Sixth Amendment case describing *Faretta* as requiring substantial compliance with the model inquiry in the *Bench Book for United States District Judges*).

That is so in light of the many reasons just articulated as to why the Sixth Amendment does not apply in this setting:  The CJA-conferred entitlement to counsel is not equivalent to the Sixth Amendment right, *see Islam* 932 F.3d at 964; revocation proceedings are civil in nature and do not present the same liberty consequences as criminal proceedings, *see Morrissey*, 408 U.S. at 480; and district courts enjoy wide discretion in that context, *see United States v. Givens*, 786 F.3d 470, 471 (6th Cir. 2015).  Instead, like our sister circuits, we instruct the district court to evaluate the validity of a waiver under the "totality of the circumstances."  *See, e.g.*, *Walton*,

145 F.4th at 485.  This functional test asks whether the record gives the district court a basis to determine that the defendant made an informed choice to proceed without counsel.  *Id.*

Taking account of the totality of the circumstances, we are assured that the district court did not abuse its discretion in concluding that Spence's waiver was knowing.  Start with the colloquy between the district court and Spence.  The thoroughness of the court's inquiry is highly probative of the validity of the defendant's waiver of counsel.  *See Boultinghouse*, 784 F.3d at 1173.  And here, the district court—as reflected by its scrutiny of whether Spence understood any potential statutory right enjoyed by him and the consequences of waiving that right—well exceeded the requirements of due process and thus did not abuse its discretion in granting the waiver.

Prior to the revocation hearing, the district court held a separate hearing to confirm that Spence wished to represent himself and to ensure that he understood "all the consequences" of doing so.  R. 83, PageID 334; *cf. Hodges*, 460 F.3d at 652 (informal, abbreviated colloquy during the revocation hearing was sufficient).  During that hearing, the district court repeatedly advised Spence of his right to counsel and of the availability of appointed counsel at no cost to him.  The court also listed the rights available to Spence at that hearing and detailed the revocation process, including the applicable evidentiary standards, the alleged violations, and the potential penalties.  Further, as Spence acknowledges, the court warned him that he would not have the benefit of an attorney's assistance in navigating those proceedings.  *See Hodges*, 460 F.3d at 652–53 (finding probative of a valid waiver a district court's warning that self-representation is not in a defendant's best interest).  The district court even took care to correct Spence through a Socratic back-and-forth when Spence expressed confusion about the possible penalties.

During the hearing, Spence confirmed that his waiver was voluntary and knowing, providing further evidence of the validity of his decision.  *Boultinghouse*, 784 F.3d at 1173–74. Spence repeatedly assured the district court that he understood his right to counsel and the consequences of waiving that right, affirming multiple times that he wished to represent himself. R. 61; R. 83, PageID 334–35.  Throughout the colloquy, Spence's answers to the district court's questions were coherent and responsive.   Further, Spence stated that he possessed the "knowledge" necessary to proceed pro se.  R. 83, PageID 340–41.  And Spence, remember, was

no rookie when it came to criminal proceedings. His experience—including multiple revocation proceedings and other encounters with the criminal justice system—further demonstrates his familiarity with the process. *Walton*, 145 F.4th at 485–86 (emphasizing that the defendant's history with the criminal system points to the validity of a waiver).

Spence resists this conclusion on a host of fronts, largely taking issue with the way the district court phrased its warnings and formulated its queries. But not even the Sixth Amendment requires a district court to follow a prescribed script when assessing a waiver of counsel. *Tovar*, 541 U.S. at 88 ("We have not . . . prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel."); *United States v. Bankston*, 820 F.3d 215, 223–24 (6th Cir. 2016) (explaining that substantial compliance with the *Bench Book*'s model inquiry suffices). So in the revocation setting—where the right to counsel is more limited—the district court likewise need not follow a rigid script in assuring itself of a waiver's validity. *See Hodges*, 460 F.3d at 650, 652 (explaining a court need not recite "magic words" or follow a "sacrosanct litany" to ensure the validity of a waiver of counsel).

Against that backdrop, Spence's objections miss the mark. He first contends that his waiver was not knowing because the district court did not ask whether he had studied the law generally or federal criminal procedure specifically. But the record shows otherwise: The court expressly reminded Spence of his lack of legal education. R. 83, PageID 336 ("You've never really studied the law. I believe you have a GED . . . ."). Spence next asserts that the district court "never admonished" him that he would be better off with counsel. Appellant Supp. Br. 17. While the district court did not reprimand him, it did warn him about the difficulties of proceeding without the assistance of a lawyer. That warning, together with the court's detailed explanation of the revocation process, sufficed to inform Spence of the consequences of self-representation.

Spence also points to aspects of his pro se representation at the revocation hearing—his limited cross-examination, concessions regarding the violations, and failure to advance mitigating arguments—as further proof that his waiver was uninformed. By his own admission, Spence may not have been particularly effective in advancing his interests. But that is not the legal benchmark, just as effectiveness is not the measuring stick where the Sixth Amendment's

more demanding standards apply. *See Faretta,* 422 U.S. at 835 n.46 (explaining that a defendant "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'"). And, in any event, we note that Spence was able to at least minimally question a witness and state his position. At day's end, the district court's thorough colloquy and repeated assurances support our conclusion that the district court did not abuse its discretion here.

B. Turning to Spence's sentence on revocation, he asserts that the sentence was procedurally unreasonable because the district court relied on an impermissible factor in setting his sentence. *United States v. Adams*, 124 F.4th 432, 438 (6th Cir. 2024). In the supervised release setting, 18 U.S.C. § 3583(e) directs a district court as to whether, and for how long, to imprison a defendant who has violated the conditions of his release. *United States v. Patterson*, 158 F.4th 700, 702 (6th Cir. 2025) (explaining that § 3583(e) instructs district courts to consider most of the general sentencing facts under § 3553(a)). According to Spence, the district court, in making that assessment, violated the rule set forth in *Esteras v. United States*, 145 S. Ct. 2031 (2025), which prohibits a district court from considering the factors listed in 18 U.S.C. § 3553(a)(2)(A) in fashioning its sentencing determination. *See* 145 S. Ct. at 2041. In particular, Spence explains, the district court improperly considered promoting "respect for the law" and "the seriousness of the offense" in conducting Spence's sentencing analysis. *Id.* at 2039.

All agree that plain error review applies to this issue because Spence did not object to his sentence at the revocation hearing. *See United States v. Vaughn*, 119 F.4th 1084, 1089 (6th Cir. 2024). That leaves Spence facing an uphill climb. To prevail on plain error, Spence must show (i) an error, (ii) that is plain, (iii) that affects his substantial rights, and (iv) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021); *United States v. Olano*, 507 U.S. 725, 736 (1993). He cannot satisfy even the first prong, as the district court did not err, let alone plainly so.

He first claims that the district court violated *Esteras* by "adopting" the government's argument that a 24-month sentence was necessary to promote "respect for the law." Appellant Supp. Br. 11; R. 82, PageID 325. But hearing an argument is not the same as embracing it, and Spence identifies nothing that suggests the district court in the end relied on the government's

§ 3553(a)(2)(A) reasoning.  As we read the record, the district court focused on factors that remain permissible in the revocation context, including deterrence, protection of the public, Spence's repeated violations, and the Grade A nature of his most recent violations.  In any event, *Esteras* prohibits reliance on "respect for the law" only insofar as it reflects retribution for the underlying offense, not when such considerations are invoked in service of permissible goals like deterrence or enforcing compliance with conditions of supervised release.  145 S. Ct. at 2039–40.

Spence next argues that the district court violated *Esteras* by considering "the seriousness of the offense."  To bolster the point, Spence emphasizes two remarks:  the district court's reference to the "penalty" when discussing the appropriate length for Spence's sentence, and its statement that it considered "in some part the nature of the offense."  Neither comment treads into prohibited territory.

The district court's use of the word "penalty" was not a retributive invocation of § 3553(a)(2)(A)'s "just punishment" concept.  The district court used the term in the ordinary sense—synonymous with a "sentence"—as it did when noting that Spence's previous revocation resulted in a "Grade C penalty."  Nothing suggests that the district court was appealing to the seriousness of the underlying crime of conviction, the concern at issue in *Esteras*.  *See Patterson*, 158 F.4th at 702.

The same is true for the district court's reference to "the nature of the offense."  To begin, we presume that district courts understand and apply the governing law, and we do not read ambiguous sentencing remarks to manufacture error where the record as a whole reflects reliance on permissible considerations.  *See United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc); *United States v. Johnson*, No. 24-3787, 2026 WL 50666, at *3 (6th Cir. Jan. 7, 2026).  And here, read in context, the district court was describing the supervised release violations before it—explicitly identifying them as "Grade A violations," the most serious offense category.  Under *Esteras*, the seriousness and nature of the supervised release conduct remains a permissible consideration; only the seriousness of the underlying federal offense is off limits.  *See Patterson*, 158 F.4th at 702 (citing *Esteras*, 145 S. Ct. at 2040) ("When § 3553(a)(2)(A) speaks of the 'seriousness of the offense,' the term 'offense' refers to 'the underlying crime of

conviction, not the violation of the supervised-release conditions.'" (quoting *Esteras*, 145 S. Ct. at 2040)).

True, the district court did mention Spence's underlying offense. But it did so only in discussing the severity of his violations of supervised release. *See* R. 82, PageID 319 ("Your actions here are similar to that original offense."). The court plainly invoked the original crime to show that greater deterrence was needed to sanction repeated offenses of similar severity—not to punish for the original offense once more.

C. Finally, Spence argues that § 922(g)(1), the felon in possession statute, violates the Second Amendment as applied to him because he is not a "dangerous" criminal. Appellant Br. 10–13; *see also United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) (discussing circumstances under which the felon in possession statute may be unconstitutional as applied to certain individuals). This challenge, it bears emphasizing, goes to the validity of his federal conviction for which he was serving a term of supervised release, not the validity of the revocation of his supervised release. That fact is decisive. A defendant "may not attempt to invalidate his original conviction at a supervised-release-revocation hearing" in an appeal from a revocation of supervised release. *United States v. Lewis*, 498 F.3d 393, 395 (6th Cir. 2007); *see also United States v. Flanory*, 45 F. App'x 456, 460 (6th Cir. 2002); *United States v. Hall*, 735 F. App'x 188, 190 (6th Cir. 2018). Instead, the proper fora for such challenges are direct appeals and, if appropriate, a petition for release under 28 U.S.C. § 2255, which grants federal prisoners "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" and to "move the court which imposed the sentence to vacate, set aside or correct the sentence").

In his reply brief, Spence protests that to label his argument as a collateral attack is to misunderstand it. He contends that his challenge to the constitutionality of § 922(g)(1) is jurisdictional because, in his view, an unconstitutional underlying conviction deprives the district court of authority to revoke supervised release. But jurisdiction concerns a court's statutory or constitutional power to adjudicate a case, not the validity of the underlying conviction. *See United States v. Cotton*, 535 U.S. 625, 630–31 (2002). Alleged defects in the conviction thus go to the merits and must be raised through direct appeal or collateral review, not in an appeal from

a revocation judgment. *See United States v. Terry*, 234 F. App'x 82, 84 (4th Cir. 2007) (per curiam). Spence's relabeling of his claim as jurisdictional does not make it so.

Even if we ignore that defect, Spence's Second Amendment challenge is unavailing. He argues that § 922(g)(1) is unconstitutional as applied to him because he is not dangerous. *See Williams*, 113 F.4th at 657. As a procedural matter, Spence likely waived the right to contest the validity of his conviction in his plea agreement. There, he agreed to "waive his right to contest any aspect of his conviction and sentence . . . under any . . . provision of federal law," *Spence*, No. 14-cr-30103-NJR-1, Dkt. No. 24, at 36, sweeping language that fairly covers his Second Amendment challenge. *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (enforcing a plea agreement with similar language).

Spence would lose on the merits in any event. His crimes, which include drug trafficking, fall into the "second category" of offenses described in *Williams*, that is, conduct that poses "a significant threat of danger" even absent overt violence. 113 F.4th at 659; *see also United States v. Oravets*, No. 24-3817, 2025 WL 2682632, at *1 (6th Cir. Sep. 19, 2025) ("[D]rug trafficking often motivates violent crime."). Spence's repeated involvement with drug distribution and firearms demonstrates the kind of dangerousness that the statute targets, confirming § 922(g)(1)'s constitutionality as applied to him.

\*     \*     \*     \*     \*

We affirm.